IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

DARIUS N. CELESTINE,                    )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )     Civil Action No.: 03-PT-1301-E
                                        )
RENT-A-CENTER, INC.,                    )
                                        )
      Defendant.                        )

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Darius Celestine's ("Celestine") Motion to Reconsider the Court's Grant of Defendant's Motion to Compel Arbitration, filed on August 13, 2003.

### FACTS AND PROCEDURAL HISTORY

Celestine was employed by Rent-A-Center ("RAC") from September 2001 until his termination in April 2002 at the entry-level position of Account Manager. *See* Compl. at ¶¶ 4, 7. As part of his duties, Celestine alleges, he was required to deliver goods from out-of-state vendors to customers. *See* Pl. Ex. A. Celestine contends that he frequently drove a delivery truck and that he loaded and unloaded furniture off of the delivery trucks. *Id.*.

Celestine filed this lawsuit on May 30, 2003, alleging that he was terminated on account of his race. *See* Compl. at ¶¶ 6-23. On June 23, 2003, RAC moved to compel arbitration and to dismiss or stay the litigation. The court granted defendant's motion on July 31, 2003, rejecting plaintiff's argument that the "transportation worker" exception to the FAA applies and staying this action pending arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") was designed "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Paladino v. Avnet Computer Techs., Inc.* 134 F.3d 1054, 1057 (11th Cir. 1998) (internal quotations and citations omitted). The FAA does not "require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir.1997) (citations omitted). However, "the FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino,* 134 F.3d at 1057. Nonetheless, "courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419-20 (11th Cir.1990).

## ARGUMENTS

### I. Plaintiff's Position[1]

Reconsideration is warranted, plaintiff argues, based on two new issues raised by defendant in replying to plaintiff's opposition to motion to compel arbitration : (1) defendant's argument that plaintiff must both be a "transportation worker" and in the "transportation industry" in order to qualify as a worker engaged in interstate commerce; and (2) defendant's

---

[1] Plaintiff requests oral argument and consideration of two affidavits (one in this case and one in the *Hill v. Rent-a-Center* case) from plaintiff's supervisor, Mr. Alcurtis Celestine. While defendant notes that Alcurtis Celestine is plaintiff's brother and has brought a separate employment action against RAC, plaintiff clarifies that Alcurtis Celestine is plaintiff's cousin.

argument that plaintiff's transportation duties were minor compared to his Account Manager duties.

Plaintiff alerts the court to two cases: *Buckley v. Nabors Drilling USA, Inc.*, 190 F. Supp. 2d 958 (S.D. Tex. 2002) and *Pittman v. Nabors Offshore Drilling, Inc.*, 2003 WL 21018856 (E.D. La. 2003). In those cases, plaintiff argues, the courts rejected an argument that seamen must actually be in the "transportation industry" in order to be seamen for purposes of the FAA[2] and that a seaman under the Jones Act is not to be construed more broadly than a seaman under the FAA.[3] Therefore, plaintiff contends, "just as a seaman under the Jones Act is not to be construed broader than a seaman under the FAA, a transportation worker under the FLSA should not be construed broader than a transportation worker under the FAA."

Additionally, plaintiff asserts, RAC submitted affidavits and testimony in *Hutson v. Rent-A-Center*, 209 F. Supp. 2d 1353 (M.D. Gal. 2001), which indicate that Account Managers spend more than fifty percent of their time performing transportation duties.[4] According to plaintiff, these affidavits support Mr. Alcurtis Celestine's affidavit.[5] Therefore, Celestine contends,

---

[2] These cited opinions did not use the term "transportation industry." The *Buckley* court did reject the defendant's argument that, in order to be covered by the FAA exemption, the seaman must be actually engaged in the movement of goods in interstate commerce; instead, the court concluded that "*all* seamen and railroad employees" qualify for the FAA exemption. *See Buckley* at 963.

[3] Specifically, these cases observed "[t]here is absolutely no indication that the FAA envisioned a more restrictive class of seamen than the Jones Act." *Pittman* at 1 (citing *Buckley* at 964-65.)

[4] Plaintiff promises to obtain these affidavits and testimony from *Hutson* counsel "within the next week or so." In *Hutson*, plaintiff states, the defendant was held to be a "Motor Carrier" for purposes of Title 49. Plaintiff further contends: "As a 'Motor Carrier,' RAC employs no person at its stores titled "driver" but instead uses "Account Managers as its truck drivers."

[5] Mr. Celestine's affidavit from this case reads:

I would estimate that Account Managers, including Darius, spent about 75% of their time actually engaged in delivering or picking up items with the truck or making collection trips. Account Managers, including Darius, spent about 25%

Account Managers were essentially truck drivers and the title Account Manager is misleading.

Plaintiff also suggests that defendant misstated the law with respect to the FAA definition of a transportation worker. In *Circuit City Stores, Inc., v. Adams*, Plaintiff notes, the Supreme Court never held that a worker must be actually engaged in the "transportation industry"; rather, the Supreme Court held that a worker must be "actually engaged in the movement of goods in interstate commerce." *See* 532 U.S. 105, 112 (2001)(citing *Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1471(D.C. Cir.)).

Plaintiff contends that the *Cole* court used almost the exact language adopted later by *Circuit City* :

> In this case, the general phrase, "any other class of workers engaged in foreign or interstate commerce," takes its meaning from the specific terms preceding it, "seamen" and "railroad employees," and therefore, under the rule of ejusdem generis, [it] include[s] only those other classes of workers who are likewise engaged directly in commerce, that is, *only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it. Id.* at 1471 (emphasis added).

Plaintiff also argues that the Supreme Court did not overturn *American Postal Workers Union v. United States Postal Service,* 823 F.2d 466, 473 (11th Cir. 1987), as defendant suggested. In *American Postal Workers Union*, plaintiff contends, the Eleventh Circuit "declined to jump into the debate of whether the FAA exclusion could be applied to all

---

of their time in the store making collection phone calls and taking care of other administrative duties. Account managers were the lowest level employee in the stores. Rent-A-Center employed about 5 or 6 persons at each of these stores, and did not employ any other persons at the stores who were primarily used as truck drivers other than the Account Managers.

*See Pl. Mot. for Reconsid.*

employment contracts, but instead adopted a definition of transportation worker more closely aligned with the later *Circuit City* Supreme Court decision.[6]  Although Postal Workers are not in the "transportation industry," plaintiff argues, they are exempt from the FAA because they are engaged in the movement of goods in interstate commerce.[7]

Finally, plaintiff contends, the language of the FAA evidences a broader intent than posited by defendant.  The FAA specifically states: "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*."  9 U.S.C. § 1 (emphasis added).  This plain statutory language, plaintiff argues, contemplates a whole class of workers who are engaged in interstate commerce.  Furthermore, plaintiff contends, the issue is not merely whether the plaintiff is a transportation worker under the FLSA but whether he is actually involved in the movement of goods in interstate commerce.  In any event, plaintiff contends, the issue is <u>not</u> whether plaintiff is in the "transportation industry."  According to plaintiff, he clearly meets the "transportation worker" definition as he spent more than fifty percent of his time actually moving goods in interstate commerce, i.e., delivering rentals to customers by truck.

---

[6] Plaintiff quotes *American Postal Workers Union* as follows:

> Numerous courts have limited the exclusion to "workers actually engaged in interstate commerce," including bus drivers and truck drivers . . . .  We need not choose sides in this debate, however, because such a reading would not assist the Postal Service.  It seems to us that, if any workers are "actually engaged in interstate commerce," the instant postal workers are.  They are responsible for dozens, if not hundreds, of items of mail moving in "interstate commerce" on a daily basis.  Indeed, without them, "interstate commerce," as we know it today, would scarcely be possible.  Thus we conclude, and the Postal Service does not seriously argue otherwise, that the workers involved in this case are "engaged in interstate or foreign commerce" within the meaning of the statutory exclusion.  Therefore, the USAA does not apply – at least not directly. (citations omitted).

[7] In support of defendant's position that a worker must be in the "transportation industry" to fall within the FAA exemption, plaintiff asserts, defendant relied upon six cases decided prior to *Circuit City*, of which none involved drivers of goods in interstate commerce.

Although defendant has argued that the vast majority of rental equipment came straight from Alabama stores, plaintiff contends, that fact does not change the nature of plaintiff's job as moving goods in interstate commerce. Plaintiff points out that the goods came from a wide variety of manufacturers nationwide. Furthermore, plaintiff contends, if the Court accepted RAC's rationale then Celestine would not be a transportation worker for purposes of the FLSA either. The plaintiff relies upon *Hutson*:

> In addition to driving goods across state lines, Plaintiff also made intrastate deliveries of goods ordered from out-of-state vendors. Plaintiff made intrastate deliveries of goods which had been specially ordered from out of state for Rent-A-Center customers. This intrastate delivery also renders him exempt from the overtime provisions of the Fair Labor Standards Act: "To be subject to the Secretary of Transportation's jurisdiction pursuant to the Motor Carrier Act, a motor carrier must be engaged in interstate commerce, which requires either the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." (Citations omitted).

*Hutson*, 209 F. Supp. 2d at 1358.

## II. Defendant's Response

Notably, defendant asserts, Celestine's arguments in support of reconsideration were rejected by Judge Bowdre in her August 5, 2003, Order granting Defendant's Motion to Compel Arbitration in the *Hill v. Rent-A-Center* case.

Furthermore, defendant argues, *Circuit City* rejected a broad application of the FAA § 1 exemption and confined "any other class of workers engaged in foreign or interstate commerce" to "transportation workers." *See Circuit City* at 1317.[8] While not addressing the scope of exclusionary language applied to "seamen" and "railroad employees," the court noted that it is a

---

[8] Defendant also notes that *Circuit City* reaffirmed the liberal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

6

"permissible inference" that Congress specifically excluded seamen and railroad employees because at the time the FAA was passed it had already enacted federal legislation providing for arbitration and grievance procedures for these two classes of workers. *Id.* at 1312.  According to RAC, Celestine now urges this court to ignore the *Circuit City* holding and rule that any involvement in interstate commerce is sufficient to fall within the FAA exclusion.  Contrary to plaintiff's assertions, defendant contends, cases standing for the proposition that the FAA § 1 "transportation worker" exclusion only applies to employees in the transportation industry are highly relevant to this litigation.  Plaintiff has ignored these cases, defendant argues, "because he cannot seriously argue that RAC is in the transportation industry; it is in the rent-to-own industry."

Defendant reiterates that employees must be employed in the transportation industry and personally involved in interstate commerce to qualify for the FAA exemption.  Defendant deems plaintiff's construction of *Circuit City* "splitting hairs" and notes: "[a] careful reading of *Circuit City* makes it apparent that the Court's use of the term 'transportation workers' meant 'transportation industry workers.'"  Defendant then highlights *Circuit City's* reference to *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 358 (7th Cir. 1997)(noting Congress's intention that "workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation") as well as the Supreme Court's observation that such legislation shortly followed when the Railway Labor Act was amended to include air carriers.  *See Circuit City* at 1312.  In *Pryner*, defendant notes, Judge Posner agreed with a prior decision in *Pietro Scalzitti Co. v. Int'l Union of Operation Eng'rs.*, 351 F.2d 576, 579-80 (7th Cir. 1965), in which it held that "the arbitration act applies to labor arbitration in all

7

industries except transportation."[9]  *Circuit City's* reliance on *Pryner*, defendant argues, indicates the Supreme Court's agreement that the residual clause of FAA § 1 was intended to apply only to transportation workers in the transportation industry.

Furthermore, defendant contends, plaintiff's position contradicts the relevant holdings of cases interpreting the scope of the FAA exclusion as it applies to "any other class of workers engaged in foreign or interstate commerce."[10]  These cases, defendant contends, held that the FAA's exclusion for "transportation workers" only applies to employees in the "transportation industry," consistent with *Circuit City*.  Because RAC is not in the transportation industry, defendant asserts, it is not subject to the FAA exclusion.

Plaintiff's reliance on *Buckley* and *Pittman* is misplaced, defendant contends, since "these courts found 'seamen' to be inherently in the transportation industry [and] did not address the residual clause . . . ."[11]  According to defendant, the holdings in these cases are confined to the "seamen" category of the exclusion.  Since RAC employees certainly are not "seamen,"

---

[9]   Defendant observes judicial agreement with Judge Posner on this issue.  *See also Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1469 (D.C. Cir. 1997); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 596-602 (6th Cir. 1995); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972).

[10]   *See, e.g., Maryland Casualty Co. v. Realty Advisory Bd. on Lab. Relations*, 107 F.3d 979, 982 (2d Cir. 1997); *Int'l Union of Operating Eng'rs., Local No. 841 v. Murphy Co.*, 82 F.3d 185, 187 (7th Cir. 1996); *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO*, 739 F.2d 1159, 1162 (7th Cir. 1984); *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 353 (S.D.N.Y. 1999); *Topf v. Warnaco, Inc.*, 942 F. Supp. 762, 765 (D. Conn. 1996); *Eng'rs Ass'n v. Sperry Gyroscope Co.*, 148 F. Supp. 521, 523 (S.D.N.Y.).

[11]   Defendant offers the following excerpt from *Buckley*:

> Consistently referring to "seamen" and "railroad employees" as the *specific* categories of workers enumerated under § 1, the Supreme Court in *Circuit City* was clearly differentiating between two categories of worker: the specific groups of workers, "seamen" and "railroad employees," who were implicitly engaged in commerce by the very nature of their jobs, and the residual "other class of workers," who could only qualify for the § 1 exemption if they were similarly engaged in foreign or interstate commerce.

*Buckley* at 962.

defendant contends, *Buckley* and *Pittman* are not relevant.

Additionally, defendant argues, plaintiff mistakenly relies upon *American Postal Workers Union* as supporting a position that an employee need not be in the transportation industry in order to qualify for the exclusion. Rather than supporting the plaintiff's view, defendant argues, the court's holding "seems to imply that because the postal service is in the transportation industry it may assume the postal workers are engaged in interstate commerce." As such, defendant contends, *American Postal* does not support plaintiff's theory that only an individual assessment, rather than individual <u>and</u> industry assessment, is necessary.[12] Defendant repeats that RAC is <u>not</u> in the transportation industry but is rather in the rent-to-own industry, and therefore plaintiff does not come under the FAA exclusion as interpreted by *Circuit City*.

Defendant proffers another reason plaintiff does not qualify for the § 1 exclusion: he is not directly engaged in the movement of goods in interstate commerce. Turning to Alcurtis Celestine's affidavit, Defendant deems this new evidence irrelevant. Plaintiff's averment that "Account Managers, including [plaintiff], spent about 75% of their time actually engaged in delivering or picking up items with the truck *or making collection trips*,"[13] defendant contends, confuses the issue by lumping disparate duties together and making it impossible to determine how much time plaintiff actually spent on deliveries and pickups.

Even assuming plaintiff spent considerable time on deliveries, defendant contends, plaintiff has provided no evidence that such duties render him a "transportation worker" pursuant

---

[12] Notably, defendant contends, plaintiff did not address the fact that no post-*Circuit City* Eleventh Circuit opinions apply the residual clause of the FAA exclusion to non-transportation industry workers.

[13] According to defendant, "making collection trips" refers to an Account Manager's duties of collecting payments from customers on rental orders.

to *Circuit City.*  Specifically, defendant asserts, plaintiff presented no evidence of significant

movement in interstate commerce (emphasis added) but instead blurs "the distinction between

special-order deliveries and normal deliveries of merchandise from the showroom."[14]  A reading

of *Hutson*, defendant contends, makes it "patently clear that it is the delivery of special-order

items that triggers the FLSA exemption; not mere delivery of any merchandise."  *See Hutson* at

1358 (finding that "[p]laintiff made intrastate deliveries of goods which had been specially

ordered from out-of-state for Rent-A-Center customers.  This intrastate delivery also renders him

exempt from the overtime provisions of the Fair Labor Standards Act" (emphasis added)).[15]

Defendant argues that plaintiff has admitted that he does not regularly perform these types of

interstate driving duties.

      Defendant criticizes plaintiff's repeated promises to provide *Hutson* affidavits.[16]

---

[14] Defendant contends that while special-order merchandise deliveries, although wholly intrastate, continue to constitute interstate commerce for purposes of the FLSA because the merchandise does not come to rest, *see Baez v. Wells Fargo Armored Car Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991), intrastate deliveries of showroom merchandise do not constitute interstate transport because the merchandise has come to rest. *See Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 944 (5th Cir. 1969).

    *Baez*, the court notes, made no reference to "special order merchandise"or "coming to rest": specifically, the court stated: "In *Opelika*, our predecessor circuit held that drivers and driver-helpers engaged in intrastate transportation of empty soft drink bottles were exempt from overtime compensation under § 213(b)(1). Although the employees themselves traveled only intrastate, the empty bottles being transported were destined for a bottling plant in the neighboring state. In the instant case, the transported checks and other instruments were bound for banks outside the state of Florida . . . . We conclude that *Opelika* controls the instant case." *See Baez* at 182.

    Similarly, the court notes, the cited portion of *Galbreath* does not appear to reference showroom merchandise; specifically, the court stated: "Whether the Motor Carrier Act exemption applies in this case is dependent upon whether the petroleum product came to rest in Atlanta and lost its interstate character or whether there was a continuity of movement of the goods from the refineries through the Atlanta plant and terminal such that the petroleum was at all times part of interstate commerce . . . . The products involved . . . did not come to rest at the terminal and were part of a continuity of movement in interstate commerce." *Galbreath* at 944-947.

[15] Hutson continues as follows: "'To be subject to the Secretary of Transportation's jurisdiction pursuant to the Motor Carrier Act, a motor carrier must be engaged in interstate commerce, which requires either the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.'"(citations omitted).

[16] According to plaintiff, these affidavits indicate that RAC Account Managers spend a majority of their time on transportation duties. As defendant notes, the affidavits in question have failed to materialize, and similar

Furthermore, defendant contends, plaintiff erroneously argues that Department of Transportation jurisdiction over certain RAC employees transforms all RAC employees into transportation workers for purposes of the FAA. Defendant explains that the Secretary of Transportation's jurisdiction extends over employees who could have been called upon or actually did engage in interstate driving at least once during a four-month period. *See* Wage-Hour *Field Operations Handbook*, 24e01(b), 5/13/82. According to defendant, such employees are exempt from overtime pay under the FLSA, and "court have applied this incredibly broad exemption to employees not normally thought of as drivers and not employed in the transportation industry."[17] Defendant argues that the *Hutson* court also applied the FLSA 13(b)(1) exemption to the plaintiff notwithstanding the fact that RAC is not in the transportation industry. *See Hutson* at 1358, n.2. Defendant asserts that nothing indicates Congress's intention to place 13(b)(1) exempt employees within the FAA section 1 exemption.

Citing *Pittman* and *Buckley* for the proposition that "seaman" has the same meaning under the Jones Act and FAA, defendant contends, plaintiff urges the court to extend this reasoning to the current case and give "transportation worker" the same meaning under the FLSA and FAA. According to defendant, neither the FAA nor the FLSA ever use the term "transportation worker." Moreover, defendant contends, the same terms in two different statutes do not have to be construed alike. *See Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 524 (5th Cir. 1989)(holding that "seamen" under the FLSA and "seamen" under the Jones Act have

---

promises to Judge Bowdre on August 5, 2003 in the *Hill v. Rent-A-Center* case went unfulfilled.

[17] *See, e.g., Friedrich v. Cable Data*, 974 F.2d 409, 416 (3d Cir. 1992)(involving computer technicians); *Sinclair v. Beacon*, 447 F. Supp. 5, 11 (W.D. La. 1976)(involving natural gas well servicing employees).

11

"different, independent meanings").[18]

### III. Plaintiff's Reply

First, plaintiff argues, defendant has attempted to mislead the court with its assertion that Judge Bowdre "has already rejected the very same arguments that Plaintiff now makes in his Motion to Reconsider." According to Celestine, Judge Bowdre's August 5, 2003 Order granting the motion to compel arbitration stated that it was based on agreement with the reasoning in Judge Propst's earlier order.[19]

Plaintiff repeats his argument that the Supreme Court in *Circuit City* did not hold that a worker must be actually engaged in the "transportation industry" to qualify for the FAA exemption. Instead, plaintiff notes, it held that a worker must be "actually engaged in the movement of goods in interstate commerce." *See Circuit City* at 112 (citation omitted). Regarding defendant's reliance upon the six cases that held that a worker must be in the "transportation industry" to qualify for the FAA exemption, plaintiff notes, each of these cases was decided before *Circuit City* and none involved drivers of goods in interstate commerce. According to plaintiff, *Circuit City* did not "reject[] a broad application of the 'transportation worker' excusion," as defendant argues; instead, the Supreme Court just limited the exclusion to transportation workers.

Plaintiff urges the court to recognize that, as an Account Manager with RAC, he was a

---

[18] Even assuming that Congress intended "seaman" to be interpreted the same way in two different statutes, defendant argues, "it is not logical to argue that 'transportation workers' have similar meanings under the FAA and the FLSA, when neither statute uses the term 'transportation worker.'"

[19] If this court grants plaintiff's motion for reconsideration, Celestine observes, Judge Bowdre may reconsider her order in *Hill v. Rent-A-Center*. Plaintiff notes that a separate Motion to Reconsider has been filed in Judge Bowdre's court.

transportation worker engaged in interstate commerce and therefore meets the requirements of FAA § 1.  The industry involved, plaintiff argues, is irrelevant since the plaintiff was a transportation worker engaged in interstate commerce.  Significantly, plaintiff reiterates, RAC was held to be  "Motor Carrier" for purposes of Title 49.  *See Hutson* at 1357 (stating "[s]ince Rent-A-Center transports property which it owns across state lines in furtherance of its commercial enterprise, the Court finds that Rent-A-Center is a motor carrier.")[20]

Furthermore, plaintiff contends, RAC incorrectly asserts that plaintiff is not directly engaged in the movement of goods in interstate commerce.  In *Leonard, et al v. Rent-A-Center,* plaintiff observes, RAC argued that its managers were involved in the transportation of goods in interstate commerce in order to obtain an FLSA exclusion from overtime for its "managers."  *See* Pl. Ex. A (excerpts from RAC's briefs in *Leonard*, CV-00-S-3404-NE (D.C. Ala. N.D. 2000)). Plaintiff further highlights RAC's argument in *Leonard* that RAC "ships property in interstate commerce" and that its employees are or could be called upon to transport property in interstate commerce. *Id.* at 45.[21]  Since Celestine was in an entry level position of Account Manager, plaintiff contends, "[i]t stands to reason that if the Defendant's Inside/Outside manager was involved in all the above transportation in interstate commerce, the lower ranking Account

---

[20] Notably, plaintiff observes, defendant has not countered plaintiff's assertion that RAC, as a motor carrier, employs no person titled "driver" but instead uses "Account Managers" as its truck drivers.

[21] Plaintiff enumerates a number of other RAC arguments from *Leonard*, including: RAC employees were also engaged in *intrastate* transport of goods in the flow of *interstate* commerce, giving the transportation of goods intrastate an *interstate* character because of the continuity of movement across state lines (*Id.* at 52-53); RAC's employees' service calls were also interstate commerce because the employees knew the goods would be transported out of state for repair and then returned in a "continuous movement of goods in interstate commerce" and "[i]t does not matter if these deliveries or pick-ups were wholly intrastate. Such activity . . . constitutes the initial or final stage of continuous movement between at least two states and is thus interstate commerce" (*Id.* at 54-58); RAC transports property from its Alabama customers to an out-of-state service facility; the *Leonard* plaintiff went out of state two or three times a week or more to pick up merchandise; and about once per week the *Leonard* plaintiff handled special orders from the store catalog from out-of-state vendors for delivery to its customers  (*Id.* at 5).

Managers were involved in more.[22]  In *Hill v. Rent-A-Center*, Celestine asserts, the plaintiff there

stated he spent a substantial portion of his time transporting furniture and appliances to

customers as an Account Manager and did not make as many deliveries later when he became an

Inside Outside Manager.  *See Hill* at 1357.  Based upon "Defendant's own prior admissions that

its managers are transportation workers engaged in interstate commerce," plaintiff contends, "the

Court need not even get to the Defendant's current claims that they are not."

    In keeping with the doctrine of elevation of substance over form, Celestine contends, he

is a transportation worker because a significant portion of his work involves transportation.  To

corroborate Alcurtis Celestine's affidavit, plaintiff attaches the affidavit of Mr. Christopher

Woods, a current assistant manager at RAC.[23]  Finally, plaintiff contends, *Dole v. Petroleum*

*Treaters* "chose substance over form in finding that because more than fifty percent of the duties

of the plaintiff were not related to seamen's duties the plaintiff was not exempt from the

overtime provisions of the [FLSA]."  Plaintiff concludes: "Conversely, in the instant case, if

more than fifty percent of the duties of the Plaintiff are transportation duties he is surely a

---

[22] Plaintiff attaches the affidavits of Chris Woods, Alcurtis Celestine, and LaShan Hill.

[23] Woods's affidavit reads:

While an Account Manager in the Oxford store, I spent approximately 60 % of my time, transporting merchandise to customers, loading merchandise onto the delivery truck and unloading merchandise from the delivery truck.  The other time was spent organizing the floor, sales and collection calls. As a portion of my duties as an Account Manager, I picked up merchandise that needed service. I returned the merchandise needing service to the store and subsequently helped reload this merchandise onto the service truck.  The service truck then delivered the merchandise to the repair center in Atlanta, Georgia.  The Account Manager is the lowest level of employee in the Rent-A-Center stores where I have been employed.  It is common in the Rent-A-Center store that I have worked, for there to be five or six employees.  At none of the stores that I have been employed were there any employees designated as delivery drivers.  This job was normally described as an Account Manager.  As an Account Manager, the majority of my work time was devoted to either driving the delivery truck or loading and unloading the delivery truck.

transportation worker."

## CONCLUSIONS OF THE COURT

While the plaintiff argues against the elevation of form over substance, the plaintiff

appears to exalt his sometime form of being a driver.  Further, plaintiff has overemphasized the

interstate commerce aspect of his job.  The FAA only applies to maritime transactions and

interstate commerce.  It does not semantically consume itself.

Plaintiff's argument that *Circuit City* overrules earlier cases with regard to

"transportation workers" is not persuasive.  If anything, *Circuit City* reinforces those cases.  The

following language in *Circuit City* supports this court's earlier decision:

> This reading of § 1, however, runs into an immediate and, in our view,
> insurmountable textual obstacle.  Unlike the "involving commerce" language
> in § 2, the words "any other class of workers engaged in . . . commerce"
> constitute a residual phrase, following, in the same sentence, explicit reference
> to "seamen" and "railroad employees."  Construing the residual phrase to
> exclude all employment contracts fails to give independent effect to the
> statute's enumeration of the specific categories of workers which precedes it;
> there would be no need for Congress to use the phrases "seamen" and
> "railroad employees" if those same classes or workers were subsumed within
> the meaning of the "engaged in . . . commerce" residual clause.  The wording
> of § 1 calls for the application of the maxim *ejusdem generis*, the statutory
> canon that "[w]here general words follow specific words in a statutory
> enumeration, the general words are construed to embrace only objects similar
> in nature to those objects enumerated by the preceding specific words."  2A
> N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991); see
> also *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991).
> Under this rule of construction the residual clause should be read to give effect
> to the terms "seamen" and "railroad employees," and should itself be controlled
> and defined by reference to the enumerated categories of workers which are
> recited just before it; the interpretation of the clause pressed by respondent fails
> to produce these results.

*See Circuit City*, 532 U.S. 102, 114-15.[24]

---

[24] This court takes judicial notice that Circuit City is engaged in interstate commerce.

15

. . . .

We see no paradox in the congressional decision to exempt the workers over whom the commerce power was most apparent. To the contrary, it is a permissible inference that the employment contracts of the classes of workers in § 1 were excluded from the FAA precisely because of Congress' undoubted authority to govern the employment relationships at issue by the enactment of statutes specific to them. By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employees, see Shipping Commissioners Act of 1872, 17 Stat. 262. When the FAA was adopted, moreover, grievance procedures existed for railroad employees under federal law, see Transportation Act of 1920, §§ 300-316, 41 Stat. 456, and the passage of a more comprehensive statute providing for the mediation and arbitration of railroad labor disputes was imminent, see Railway Labor Act of 1926, 44 Stat. 577, 46 U.S.C. § 651 (repealed). It is reasonable to assume that Congress excluded "seamen" and "railroad employees" from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers.

As for the residual exclusion of "any other class of workers engaged in foreign or interstate commerce," Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific, enumerated types of workers identified in the preceding portion of the sentence. It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation. See *Pryner v. Tractor Supply Co.*, 109 F.3d, at 358 (Posner, C.J.). Indeed, such legislation was soon to follow, with the amendment of the Railway Labor Act in 1936 to include air carriers and their employees, see 49 Stat. 1189, 45 U.S.C. §§ 181-188.

*Id.* at 120-21.

This court is satisfied that the exclusion applies to persons engaged in the transportation industry. *See Pryner, supra.*[25] Otherwise employees of all types who incidentally drive during their employment would be included under the exclusion. At what stage or degree of activity

---

[25] Such a conclusion is consistent with the Supreme Court's apparent support for a narrow interpretation of the section 1 exclusionary clause. *See Patterson v. Tenet Healthcare*, 113 F.3d 832, 836 (8th Cir. 1997).

16

would they fall under the exclusion?  Where would the line be drawn?

The plaintiff's motion will be denied.

This ___ day of September, 2003.


ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

17